## William M. P. Wolf for use of S. T. Atkins, Defendant in Error, v. A. F. Lake, Plaintiff in Error.

### Gen. No. 17,230.

1. PLEADING—*reference to usee as "plaintiff."* Where an action is brought by one person for the use of another, it is immaterial that the statement of claim refers to the beneficial usee as "plaintiff."

2. VENDOR AND VENDEE—*earnest money.* Where a contract for the sale of land provides that the earnest money shall be held by defendant, agent of the vendor, for the mutual benefit of the parties, and in case the purchaser fails to complete the contract shall be forfeited as liquidated damages, defendant does not become liable to plaintiff, the purchaser, in paying the money to the vendor after the plaintiff has refused to complete the contract.

3. VENDOR AND VENDEE—*when continuation of abstract is waived.* In an action to recover earnest money paid on a contract for the purchase of land, plaintiff cannot excuse his failure to complete the contract by showing that the abstract was not continued to date, where it is proved that the continuation was waived.

4. APPEALS AND ERRORS—*disposition of cause.* Where an improper judgment is rendered in a cause tried below without a

jury, the appellate court will, in disposing of it, render such judgment as should have been rendered.

Error to the Municipal Court of Chicago; the Hon. Frederick L. Fake, Jr., Judge, presiding. Heard in this court at the March term, 1911. Reversed and judgment here. Opinion filed March 24, 1913.

A. E. Lake, for plaintiff in error.

Charles E. Selleck, for defendant in error.

Mr. Justice Brown delivered the opinion of the court.

This is a writ of error to the Municipal Court of Chicago sued out to reverse a judgment of that court for $150 in favor of the plaintiff below, defendant in error here, Wm. M. P. Wolf, against A. F. Lake, the defendant below and plaintiff in error here. On September 20, 1909, Wm. M. P. Wolf signed a contract, which Lake also signed, as follows: "H. D. Maize by A. E. Lake, his attorney." This contract was for the purchase by Wolf and the sale by Maize of certain property in Western Springs in this county. The parts of the contract essential to consider in this controversy follow:

"This memorandum witnesseth: that H. D. Maize hereby agrees to sell and W. P. Wolf agrees to purchase at the price of sixty-nine hundred dollars the following described real estate situated in Cook County, Illinois: Lot, etc., * * * subject to Deed of Trust for $5100.00 due May 1, 1911, which purchaser agrees to assume. Said purchaser has paid one hundred and fifty dollars as earnest money, to be applied on said purchase when consummated and agrees to pay within five days after the title has been examined and found good the further sum of seven hundred fifty dollars * * * provided a good and sufficient warranty deed, conveying to said purchaser a good title to said premises (subject as aforesaid) shall then be ready for delivery. * * * *A complete Abstract of*

*Title or merchantable copy to be furnished within a reasonable time, with a continuation thereof brought down to this date.* In case the title upon examination is found materially defective, within ten days after said abstract is furnished, then unless the material defects be cured within sixty days after written notice thereof, the said earnest money shall be refunded and this contract shall become inoperative.

"*Should said purchaser fail to perform this contract promptly on his part, at the time and in the manner herein specified, the earnest money paid as above shall at the option of the vendor be forfeited as liquidated damages including commissions payable by vendor and this contract shall be and become null and void.* Time is of the essence of this contract and of all the conditions thereof.

"This contract and earnest money shall be held by A. E. Lake for the mutual benefit of the parties hereto."

There was delay in the carrying out of this contract and much communication about it between Lake and one S. T. Atkins, who, as a real estate agent, was the negotiator with Lake concerning the execution of the contract in the first instance, and who took the contract away after it was drafted and brought it back signed by Wolf.

October 29, 1909, Lake wrote Wolf the following letter:

"Mr. W. M. P. WOLF,
    % Samuel T. Atkins,
        1038 Stock Exchange Building,
                Chicago, Ill.

DEAR SIR:

Your contract with H. D. Maize dated September 20, 1909, for the South West corner of Chestnut and Central streets, Western Springs, Ill., is hereby cancelled at the request of H. D. Maize for failure to pay the $1650 due thereon according to the terms of said contract, and the $150 which I held has been paid to H. D. Maize as liquidated damages.

                Yours respectfully,
                    ALBERT E. LAKE."

July 5, 1910, Wolf (for the use of Atkins) brought the suit against both Lake and Maize resulting in the judgment here questioned, alleging in his statement of claim that Lake as the "escrow holder of said earnest money paid under said contract, wrongfully paid same over to said Maize and said Maize, with full knowledge of same, accepted said earnest money."

Maize was never served and the suit was prosecuted and the judgment obtained against Lake alone.

The "statement of claim" seemingly refers to Atkins as "Plaintiff" in distinction from Wolf, and in the argument of this writ of error much emphasis is placed by the plaintiff in error on the want of proof that Atkins was properly a principal in the transaction and entitled to bring the suit.

We agree with counsel for defendant in error as to the entire irrelevancy of this. Whatever incorrect use of the word "plaintiff" was made in the statement of claim, Wolf was the nominal plaintiff, and it does not concern the defendant what beneficial usee was named in the action. Atkins v. Moore, 82 Ill. 241; Schott v. Youree, 142 Ill. 233.

We agree also with the counsel for defendant in error in the position which he takes in his brief and argument, that the real question at issue in this case is whether Atkins representing Wolf waived the continuation to date of the abstract involved in this controversy. If, there being no such waiver, Maize did not, through Lake or otherwise, tender an abstract continued to date, he did not under the contract acquire a right to Wolf's earnest money and Lake had no right to pay it over to him.

If, on the other hand, Wolf, through his agent Atkins or otherwise, waived the continuation of said abstract beyond the date of August 30th, to which date an abstract extended that it is conceded was by Lake as agent for Maize delivered to Atkins as agent for Wolf, then, as there is no contention that such objections as were found and insisted on in the opinion of title rendered by the legal adviser of Wolf and Atkins were

not sufficiently met, nor any doubt that the "deal" which Atkins had been relying on had failed without the substitution of another, nor any reason to suppose that Wolf could or would have carried out promptly the contract which he had made; it follows that Lake had a right, under the provisions of the contract heretofore quoted, to pay over the money in his hands to Maize as liquidated damages for breach of the contract.

Upon the decision by us of this question must be based the disposition of this suit. We are unable to agree with the learned court below.

As is clearly pointed out by the counsel for defendant in error in his brief, there is on this question a conflict of evidence. Atkins, whose testimony is relied on by the defendant in error, who is in fact in one sense the defendant in error himself, and Wolf, who is the plaintiff in error, directly clash in their statements.

Atkins, testified, according to the statement of facts filed in the cause:

"I obtained the abstract from a Mr. Winkler and had an examination made of it, but said abstract was only brought down to August 30th. After I had had the examination made I delivered it to Mr. Lake and requested him to have it brought down to date in accordance with the contract, but he refused to have the continuation made. The examination I had made was by L. J. Atkins, a lawyer, and dated October 4, 1909." (It seems to be conceded that Winkler was the holder of the incumbrance mentioned in the contract.)

A. E. Lake on the other hand testified:

"I gave Mr. Atkins an order on Mr. Winkler for the abstract, and explained to him that it had been brought down to August 30th, and that as Mr. Maize lived in Springfield, Ohio, there were no judgments here against him, and that if his party was anxious to close the deal, it might save him some time not to have the abstract brought down. Mr. Atkins said that under the circumstances he saw no necessity for having the

continuation made, and that he would take it up with Mr. Jones and if it was not brought down, examine the tract book and see if any transfers had been made since that date.   I told him in the event Mr. Jones wanted it brought down to take it to the Chicago Title & Trust Company and instruct them to charge it to my account, which he agreed to do.    *    *    *    He returned to the city on or about October 5th and returned the abstract to me.   He said the title was satisfactory and that he would have parties close it up on the following day.   I talked with Mr. Atkins over the telephone a number of times, and he was in to see me once or twice after October 4th, always asking for delay, but made no objections to the property on account of title and made no request that I have the abstract continued.''

But balanced as the evidence might be considered by these contradictory statements taken by themselves, we feel that the other circumstances and conversations testified to by both parties or by one and not denied by the other, are inconsistent with Mr. Atkins' testimony and make a clear preponderance of weight in favor of Lake's.   By such other testimony it appears that Atkins in the first instance called on Lake, who had advertised the Maize property for sale, and as a real estate dealer or broker informed himself as to the terms; that after other calls he announced to Lake that he had a purchaser for the property; that he took from Lake the draft of a contract and had Wolf, a hotel porter, sign it, although he told Lake that the party who was really going to buy the property was one Jones, who occupied a responsible position with a large business house; that Lake urged, and Atkins promised, great promptness in the matter, and that Atkins offered as proof that this could be secured assurances that Jones was anxious to move; that Atkins did actually get the abstract from Winkler and have it examined at once, instead of waiting for its continuation; that he brought back to Lake an opinion on it with objections to the title, which objections related solely to taxes and the identity of certain

"Washburnes," whose residence was variously given in different items of the abstract; that, as he testified himself, he "made no objections to the title, excepting taxes and the residence of the Washburnes, both of which were fixed up by Mr. Lake;" that after this Mr. Lake called up Mr. Jones and Jones told him that Atkins had been trying to sell him the property; that he, Jones, had decided not to take it, and that Lake would better, if he had another purchaser, sell to him; that finally Atkins told him that Jones "had cold feet," but that he had another party who he thought would take the property.

Atkins himself testified, "I lost my customer and was looking for another party to buy the house."

These things make us believe that the waiver of continuation was made so far as the expected sale for which the contract was made is concerned, irrespective of the statement in Lake's testimony that when Atkins told him that he had another customer for the property than Jones he (Lake) told him that he must act immediately; that he was having the abstract brought down, and that if he secured another purchaser the abstract would be in shape to prevent any delay if that purchaser required an abstract to date, and irrespective of the statement of Lake connected therewith that at the trial of the case the abstract was in the court room, brought down to October 15. We are therefore not called on to pass on the position of the defendant in error that "an argument based upon an alleged continuation of the abstract of title can not be considered" because the abstract was not offered in evidence.

As this cause was tried below without a jury, we may in disposing of it render such judgment as in our opinion the court below should have rendered.

The judgment of the Municipal Court is reversed and a judgment of *nil capiat* and for costs in both courts will be entered here against the plaintiff (the defendant in error here) and in favor of the defendant (the plaintiff in error here).

*Reversed and judgment here.*